**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|                              |     |                              |
| ---------------------------- | --- | ---------------------------- |
| DAVID HELLMAN,               | :   |                              |
|                              | :   | Civ. No. 16-8561 (FLW)       |
| Petitioner,                  | :   |                              |
|                              | :   |                              |
| v.                           | :   | **OPINION**                  |
|                              | :   |                              |
| UNITED STATES OF AMERICA,    | :   |                              |
|                              | :   |                              |
| Respondent.                  | :   |                              |

**WOLFSON, Chief Judge:**

**I.      INTRODUCTION**

Petitioner David Hellman ("Hellman" or "Petitioner") is a federal prisoner proceeding, through counsel, with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.)  The Government has opposed the motion.  (ECF No. 5.)  Petitioner filed a reply. (ECF No. 6.)  For the following reasons, Petitioner's § 2255 motion is denied with prejudice and a certificate of appealability will not issue.

**II.      BACKGROUND**

**A.      The Underlying Criminal Proceeding**

On October 10, 2013, Petitioner was arrested, along with seven others, pursuant to a superseding criminal complaint (the "Criminal Complaint"), which charged him with one count of conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c).  *United States v. Hellman*, Crim. No. 14-101, ECF No. 4 (D.N.J.).  Petitioner's arrest was effectuated at a warehouse in Edison, New Jersey, during the execution of a sting operation by the Government (the "2013 Sting Operation").  *Id.* at 2–3.  The 2013 Sting Operation related to the Government's investigation into allegations that Petitioner and the other defendants named in the Criminal Complaint, all of whom

are Orthodox Jewish men, engaged in criminal means to facilitate Orthodox Jewish divorces. *Id.*

According to the Criminal Complaint, to effectuate an Orthodox Jewish divorce, a husband must provide his wife with a document known as a "get." *Id.* at 4. A get serves as documentary proof of the dissolution of a marriage under Jewish law, and a divorce is not official until a get is given to the wife by the husband. *Id.* Codefendants in this matter, Mendel Epstein, Martin Wolmark, and Jay Goldstein, who were Orthodox Jewish rabbis, were accused of charging *agunah*, women whose husbands would not provide gets, large sums of money to obtain gets from their husbands by means of violence and threats of violence. *Id.* Petitioner was described in the Superseding Complaint as a "tough guy" who would "participate in the actual kidnapping and assault of the recalcitrant husbands to coerce them into giving the get." *Id.* at 5.

On March 6, 2014, Petitioner agreed to waive indictment and pleaded guilty, pursuant to a plea agreement with the Government, to a one-count information charging him with having travelled in interstate commerce to commit extortion, a crime of violence, in violation of 18 U.S.C. § 1952(a). Crim. No. 14-101, ECF No. 125, at 1. As part of the plea agreement, both Petitioner and the Government agreed to "waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." *Id.* at 4. Specifically, Petitioner agreed to waive his right to file an appeal or collateral attack motion that "challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 24." *Id.* at 9.

While the charge to which Petitioner pleaded guilty related to his involvement in the 2013 Sting Operation, the Government's agreement to not initiate any further proceedings against Petitioner required that a 2011 forced get, in which he also participated, be considered as relevant

conduct for the purpose of sentencing. *Id.* at 1–2.

The 2011 forced get occurred on August 22, 2011, when six men, including Petitioner, entered the apartment of Usher Chaimowitz and his roommate, Menachem Teitelbaum, to purportedly obtain a get from Chaimowitz. The facts of the 2011 forced get were adduced at trial of certain codefendants in this matter, *United States v. Epstein*, Crim. No. 14-287 (D.N.J.),[1] through testimony from Teitelbaum. (*See* ECF Nos. 1-8, 5-1, 5-2, 5-3.) Teitelbaum testified that on August 22, 2011, he awoke to six men in the apartment he shared with Chaimowitz "with a punch to [his] face and [his] teeth being pulled, with [his] arms and legs bound." (ECF No. 1-8, at 20.) Chaimowitz's arms and legs were also bound. (*Id.* at 21.) At some point, Teitelbaum testified that he began to fight the intruders and they pushed his head into a wall and again bound his arms and legs. (*Id.* at 22–24.) At the same time, Teitelbaum testified that the other intruders were "beating up" Chaimowitz and "calling out to him all the time, give a get, give a divorce, to your wife." (*Id.* at 25.) Teitelbaum was eventually moved to the kitchen and the intruders remained with Chaimowitz for about an hour before leaving the apartment. (*Id.* at 30–33.) After the intruders left the apartment, Teitelbaum testified that he had Chaimowitz take a photo on his cell phone of Teitelbaum while his arms and legs were still bound. (*Id.* at 34.) Teitelbaum then took photos of Chaimowitz before calling the Shomrim, the Jewish community police, and the Hatzolah, the volunteer Jewish first aid department. (*Id.* at 36.)[2] Both Teitelbaum and Chaimowitz

---

[1]    The *Epstein* trial was held between March 3, 2015 and April 21, 2015. *See* Crim. No. 14-287 (D.N.J.).

[2]    At trial, Teitelbaum testified that while certain photos were taken immediately following the incident, some were taken after he and Chaimowitz returned home from the hospital and others were taken days after the incident. (*See* ECF No. 1-8, at 36–54.) The issue of when certain photographs were taken was further explored on cross-examination. (*See, e.g.*, ECF No. 5-1, at 102, 105–08; ECF No. 5-2, at 20–23, 41, 63–64; ECF No. 5-3, at 24–26.)

were taken to the hospital. (*Id.* at 37.) Teitelbaum alleged that four of his teeth were broken result of the incident. (*Id.* at 63.)

Petitioner was sentenced on November 17, 2015. (ECF No. 1-6.) At sentencing, this Court made certain findings regarding the 2011 forced get in consideration of the § 3553 factors. (*Id.* at 32–34.) I specifically noted that:

> [The] 2011 incident actually involved not only threats but assaults as well. I note that [the Government] did reference the fact that I said yesterday that I heard the testimony of one of the victims, the roommate of the husband, and I said I did not credit all his remarks. I think some of it was a bit fantastical and embellished. But there is no dispute that both victims – the husband and the roommate, and the roommate, who happened to be there because he lived there, wasn't even the object of this get, were restrained, were tied up, were assaulted in some manner. The husband was ultimately taken to the hospital.
>
> And I do understand that there may have been a hope that there would not be physical harm, but everyone who went into that room understood that when you restrain individuals, when you are going to threaten them, and that possibility existed, a real possibility, and it occurred here. Because no one knew how it would actually play out, and they all went in with that knowledge that force could be used, and the recalcitrant husband could suffer harm.

(*Id.* at 33–34.) Ultimately, Petitioner was sentenced to a 44-month term of imprisonment, below the Sentencing Guidelines range of 51 to 63 months. (*Id.* at 8, 38.)

## B. The § 2255 Motion

On November 16, 2016, Petitioner, acting through counsel, filed the instant motion under 28 U.S.C. § 2255. (ECF No. 1.) Petitioner asserts that he is entitled to relief under § 2255 based on newly discovered evidence confirming that certain portions of Teitelbaum's testimony at the *Epstein* trial was false. Petitioner argues that because Teitelbaum's testimony was a "material" factor relied upon by this Court at sentencing, he is entitled to resentencing. (ECF No. 1-1, at 5.)

In support of his motion, Petitioner relies upon an affidavit (the "Shaska Affidavit")

submitted by codefendant Simcha Bulmash in support of his own motion under § 2255 for resentencing. *Bulmash v. United States*, No. 16-7885, ECF No. 1-1.[3] Bulmash retained a private investigator, Testa Shaska, who interviewed Detective Joe Solomon of the New York City Police Department regarding the 2011 forced get. *Bulmash*, No. 16-7885, ECF No. 1-13. Detective Solomon was assigned to investigate the 2011 incident. *Id.* As part of his investigation, Detective Solomon inspected Teitelbaum and Chaimowitz's apartment and interviewed both regarding the incident. *Id.* The Shaska Affidavit sets forth the following details which Petitioner asserts is "newly discovered" evidence regarding the veracity of Teitelbaum's testimony:

> 5. Detective Solomon remembered Mr. Teitelbaum's appearance on August 22, 2011 and recalled that Mr. Teitelbaum's face was not "mangled" and he did not appear to be missing any teeth.
>
> 6. Detective Solomon told me that there are no photographs in the NYPD case file related to this incident. Detective Solomon also informed me that, during the first interview of Mr. Teitelbaum on August 22, 2011, he did not present Detective Solomon with any photographs or state that any photographs existed related to the incident.
>
> 7. One of two days after the incident, according to Detective Solomon, Mr. Teitelbaum arrived at the precinct and showed him pictures which Mr. Teitelbaum represented were "recreations" of the crime scene. Detective Solomon told me that he informed Mr. Teitelbaum that he could not include those photographs in the case file because they were not actual crime scene photographs.

*Id.* at 2. Shaska showed Detective Solomon two of the photos that were admitted at trial of Teitelbaum and he "confirmed that these photos were the ones that Mr. Teitelbaum showed him . . . and represented to be 'recreations' of the event." *Id.*

The Government opposes Petitioner's motion, arguing that Petitioner waived his right to

---

[3] Petitioner has additionally joined and adopted the arguments raised in Bulmash's motion. (ECF No. 1-1, at 16 n.11.)

file a collateral attack motion in his plea agreement. (ECF No. 5, at 25–35.) The Government further argues that even if that waiver were not enforced, Petitioner's claim for resentencing based on the Shasta Affidavit is frivolous and lacks merit. (*Id.* at 17–24.)

### III. LEGAL STANDARD

To grant relief on a federal prisoner's motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, the Court must find that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "Section 2255 permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (quoting *United States v. Addonizio*, 445 U.S. 178, 185 (1979)). Accordingly, a petitioner who attacks his sentence "based on some error in the sentencing proceeding [must] allege (1) that the district court received 'misinformation of a constitutional magnitude' and (2) that the district judge relied at least in part on that misinformation.'" *Id.* (citing *United States v. Spiropoulos*, 976 F.2d 155, 163 (3d Cir. 1972)).

"In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542. 545 (3d Cir. 2005) (quoting *Gov't of V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte*, 865 F.2d at 62.)

### IV. DISCUSSION

The Government argues that Petitioner is not entitled to relief under § 2255 because he waived his right to file any collateral attack motion in the plea agreement. Petitioner, however,

maintains that enforcement of the collateral attack waiver would work a miscarriage of justice because of the significant effect that Teitelbaum's testimony had on this Court's issuance of his sentence.

The Third Circuit has held that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), *abrogated in part on other grounds*, *Garza v. Idaho*, 139 S. Ct. 738 (2019). This includes the defendant's right to file an appeal or a collateral attack motion under 28 U.S.C. § 2255. *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015).

A defendant's waiver of his right to file an appeal or collateral attack motion is enforceable so long as it was "entered into knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." *Mabry*, 536 F.3d at 237. While "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record before it." *Id.* at 238.

### A.       Knowing and Voluntary Waiver

Petitioner does not challenge the knowing and voluntary nature of his appeal and collateral attack waiver. Nevertheless, the Court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Mabry*, 536 F.3d at 237. Thus, this Court must review the record to ensure that Petitioner's waiver of his collateral rights was, in fact, knowing and voluntary.

The language of the plea agreement is unambiguous in its waiver of Petitioner's appellate and collateral attack rights provided he received a sentence at or below the Guidelines range set

forth in the plea agreement.  The plea agreement plainly sets forth that Petitioner

> voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 24.

Crim. No. 14-101, ECF No. 125, at 9.  The plea agreement further confirms that Petitioner

reviewed the agreement with his attorney and that he "understands this letter fully."  *Id.* at 6.

I confirmed that Petitioner entered into the appeal and collateral attack waiver knowingly

and voluntarily during the plea hearing:

> THE COURT:  Your plea agreement also provides that under certain circumstances you are waiving or giving up your right to file an appeal or collaterally attack the sentence imposed in this case.
> Are you familiar with those?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Specifically, I'll ask you some questions in that regard at this time.
>
> Do you understand that the law permits you and the government to file an appeal of your sentence if either you or the government believe that there had been an error?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Do you understand that you also have a right, if you think there has been an error, to file a post-conviction challenge to your conviction or sentence?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Do you understand that both you and the government are giving up the right to file an appeal or post-conviction challenge under certain circumstances that are set forth in the plea agreement itself and in Schedule A to the plea agreement.
>
> THE DEFENDANT:  Yes, your Honor.

THE COURT:  Specifically, do you understand that if I impose a term of imprisonment that falls within or below the Guideline range that result from a Guideline offense level of 24, you cannot appeal or challenge your sentence?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the United States cannot appeal if your prison sentence is within or above the Guideline ranges that result from a Guideline offense level of 24?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that neither you nor the United States can appeal claiming that I should not have accepted your stipulations in the plea agreement?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you discuss this waiver of appeal and waiver of your right to file for post-conviction relief with your attorney?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you satisfied with the explanations that he has provided to you?

THE DEFENDANT:  Yes, your Honor.

(ECF No. 1-5, at 16–17.)

Having reviewed the plea colloquy, the Court is satisfied that Petitioner's waiver of his right to file an appeal or collateral attack waiver was knowing and voluntary.  Petitioner affirmed to the Court during the plea colloquy that his counsel had explained to him the consequences of the waiver and that he understood those consequences of entering into the plea agreement.  This is sufficient to confirm that Petitioner's waiver was knowing and voluntary.  *See United States v. Khattak,* 273 F.3d 557, 563 (3d Cir. 2001) (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired under Federal Rule of Criminal Procedure 11); *Muhammad v. United States*, No. 08-0061, 2010 WL 2771772, at *3 (D.N.J. July 13, 2010); *Colon*

*v. United States,* No. 05-123-2, 2009 WL 37487, at *2 (E.D. Pa. Jan. 5, 2009) (holding that defendant's waiver of his right to appeal or collaterally attack his conviction or sentence is enforceable because there was no support in the record that he acted unknowingly or involuntarily).

### B.     Miscarriage of Justice

To determine whether a miscarriage of justice would occur as a result of enforcement of a waiver of appeal and collateral attack rights, courts consider, among other things, the following factors:

> [T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak*, 273 F.3d at 563 (alteration in original) (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).  A miscarriage of justice may occur where "enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement" or where there are "allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver."  *Mabry*, 536 F.3d at 243.  Moreover, "'[i]t is not enough that an issue [is] meritorious;' after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider."  *United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014) (alterations in original) (quoting *United States v. Castro*, 704 F.3d 125, 136 n.6 (3d Cir. 2013)).  Courts should employ "a common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver."  *Mabry*, 536 F.3d at 242–43.

To assess the first *Khattak* factor—the clarity and gravity of the alleged error—the Court will briefly comment on the merits of Petitioner's motion.  Petitioner argues that the newly

discovered evidence set forth in the Shaska Affidavit demonstrates that he is entitled to resentencing because it shows that "Teitelbaum exaggerated and completely fabricated large portions of his testimony in material ways." (ECF No. 1-1, at 20.) Petitioner asserts that there was no way he could have known the extent that Teitelbaum exaggerated his testimony prior to sentencing. (*Id.* at 23.) Thus, because Petitioner contends that this Court made erroneous findings of fact at sentencing, that have since been refuted by the Shaska Affidavit, there was a defect of fundamental fairness at his sentencing. (*See id.* at 24.)

A motion for a new trial based on newly discovered evidence will be granted where the following requirements are met:

> (a) the evidence must be in fact, newly discovered, i.e., discovered since trial;
>
> (b) facts must be alleged from which the court may infer diligence on the part of the movant;
>
> (c) the evidence relief on, must not be merely cumulative or impeaching;
>
> (d) it must be material to the issues involved; and
>
> (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. Brown*, 595 F.3d 498, 511 (3d Cir. 2010). While the Third Circuit does not appear to have determined what requirements must be met to entitle a petitioner to resentencing based on newly discovered evidence, other courts have applied the same factors as for a new trial and substituted the last factor for whether the newly discovered evidence "would probably result [in] a more favorable sentence." *Swiss v. United States*, Crim. No. 08-76, 2008 WL 820269, at *1 (W.D.N.C. Mar. 20, 2008) (quoting *United States v. Corson*, No. 01-228, 2002 WL 547213, at *3 n.2 (D. Maine Apr. 10, 2002)); *see also Ajemian v. United States*, 171 F. Supp. 3d 206, 211

(S.D.N.Y. 2016) (ordering a hearing on amount of loss based on newly discovered evidence where correction of alleged error would possibly entitle petitioner to a reduced sentence); *Corson*, 2002 WL 547213 (assuming "that the standard for newly discovered evidence in the context of a resentencing hearing is identical to the standard for granting a new trial").[4]

The Shaska Affidavit does not entitle Petitioner to resentencing. As this Court determined in its opinion in *Bulmash*, the information set forth in the affidavit is not "newly discovered" because the information was revealed at the *Epstein* trial. Teitelbaum's credibility was a significant issue at the *Epstein* trial and the issues raised in the Shaska Affidavit were dealt with both on his direct and cross-examinations. Evidence is not considered "newly discovered" if counsel knew, or could have known through reasonable diligence, of the evidence at the time of sentencing. *See Cimera*, 459 F.3d at 461. There is no reason that Petitioner's counsel could not have obtained the information set forth in the Shaska Affidavit prior to sentencing. Indeed, like Bulmash, Petitioner has offered no explanation for why his counsel did not seek out this information sooner—either by reviewing the record of the *Epstein* trial or by contacting Detective Solomon. Simply because Petitioner conducted his investigation post-sentencing and this

---

[4]     Petitioner argues that this standard, which is substantially similar to the standard for a new trial under Federal Rule of Criminal Procedure 33, is inapplicable to a timely motion under § 2255 based on newly discovered evidence because it imposes a diligence requirement. Petitioner argues that because his Petition was timely filed, there is no "procedural due diligence or newly discovered evidence threshold requirements" applicable to his claim. (ECF No. 6, at 10.) I disagree. The diligence requirement for a newly discovered evidence claim relates not to a petitioner's diligence in presenting his claim to the court, but "whether the evidence at issue could have been discovered before or at the time of trial with the exercise of reasonable diligence on behalf of the defendant and/or his counsel." *United States v. Kelly*, 539 F.3d 172, 182 (3d Cir. 2008) (citing *United States v. Iannelli*, 528 F.2d 1290, 1293 (3d Cir. 1976)). Indeed, diligence is a key factor of this inquiry as the Third Circuit has held that "evidence is not 'newly discovered' if it 'was [actually] known or could have been known by the diligence of the defendant or his counsel.'" *United States v. Cimera*, 459 F.3d 452, 461 (3d Cir. 2006) (quoting *United States v. Bujese*, 371 F.2d 120, 125 (3d Cir. 1967)).

information is new to him does not render it "newly discovered" for the purpose of obtaining relief under § 2255.  *See id.*

Moreover, the Shaska Affidavit does not call into question any material testimony on which I relied in issuing Petitioner's sentence.  The Shaska Affidavit calls into question the veracity of two issues:  (1) when the photographs of Teitelbaum were taken and (2) the extent of Teitelbaum's injuries.  (*See* ECF No. 1-13.)  These were not material issues I considered in sentencing Petitioner.  Indeed, the affidavit does not call into question the findings that I made at sentencing regarding the facts underlying the 2011 forced get.  Those facts are undisputed:  Petitioner and six others entered the apartment of Teitelbaum and Chaimowitz with the intent of obtaining a get from Chaimowitz through the use of threatened and actual force.  Petitioner and his codefendants, carried out that intent.  Petitioner admitted to these undisputed facts during his plea hearing:

> THE COURT:  On or about August 22nd, 2011, did you and a number of accomplices go to a residence in Brooklyn, New York?
>
> THE DEFENDANT:  Yes, your honor.
>
> THE COURT:  Did you go to the residence in Brooklyn with the intent of forcing a Jewish man, who I will refer to as Husband 1, to give his wife a get?
>
> THE DEFENDANT:  Yes, your honor.
>
> . . .
>
> THE COURT:  Did you and your accomplices intend to physically confine or restrain Husband 1 in order to obtain the get?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Did you and your accomplices intend to threaten Husband 1 with bodily injury in order to obtain the get?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Did you and/or your accomplices, in fact, restrain Husband 1 to obtain the get?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Did you and/or your accomplices, in fact, threaten

13

> Husband 1 with bodily injury to obtain the get?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Did you and/or your accomplices, in fact, injure Husband 1?
>
> THE DEFENDANT: Yes, your Honor.

(ECF No. 1-5, at 27–28.)

I did not find Teitelbaum's testimony credible and that I credited only certain undisputed aspects of that testimony. The Shaska Affidavit does not call into question those findings in any way. At best, the Shaska Affidavit constitutes mere impeachment evidence that goes to Teitelbaum's credibility. This is not enough to grant Petitioner to a new sentence. *See United States v. Onque*, 169 F. Supp. 3d 555, 581 (D.N.J. 2015) (observing that impeachment evidence is insufficient to demonstrate that testimony given by a material witness was false for the purpose of granting a new trial based on perjured testimony). Because this Court finds Petitioner's basis for relief under § 2255 lacking in merit, the first *Khattak* factor weighs in favor of enforcement of the appellate waiver.

As in *Bulmash*, the remaining *Khattak* factors weigh in favor of enforcing the waiver. The second and third factors—the impact on Petitioner and the Government weigh in favor of enforcement. The impact of enforcing the appellate agreement ensures both Petitioner and the Government receive the benefit of their bargain made by entering in the plea agreement. *See United States v. Abuhouran*, 119 F. App'x 402, 404 (3d Cir. 2005). While Petitioner argues that the impact on him would be severe as the "fundamental fairness" of his sentencing was allegedly impacted by the Court's reliance on Teitelbaum's testimony, I disagree. As the Court has explained, the Shaska Affidavit does not call into question any material testimony pertinent to sentencing that would render Petitioner's sentence unfair.

Moreover, the fourth *Khattak* factor—Petitioner's acquiescence in the result—weighs in

favor of enforcement of the appeal waiver. As set forth in detail above, Petitioner "fully acquiesced in the plea agreement and the waiver of his collateral appeal rights." *See Jones v. United States*, No. 13-3748, 2016 WL 81253, at *5 (D.N.J. Jan. 7, 2016). Indeed, by assenting to the terms of the waiver, Petitioner pled guilty to the lesser charge of extortion, as opposed to conspiracy to commit kidnapping. *Accord Mabry v. Shartel*, 632 F. App'x 707, 711 (3d Cir. 2015).

A miscarriage of justice would not result if the Court enforced the waiver as set forth in the plea agreement. Petitioner has not demonstrated any unusual circumstance which would enable this Court to invalidate the waiver. Indeed, Petitioner's motion "does 'not implicate fundamental rights or constitutional principles'" and his challenge to his below-the-Guidelines range sentence "is precisely the type of appeal his appellate waiver was intended to foreclose." *See Grimes*, 739 F.3d 125, 131 (3d Cir. 2014). Accordingly, Petitioner's § 2255 motion is denied.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a litigant may not appeal a final order in a § 2255 proceeding unless the judge or a circuit justice issues a certificate of appealability ("COA"). That section further directs courts to issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* 28 U.S.C. § 2255(d). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner is not entitled to relief.

## VI. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 motion is denied with prejudice. Although

courts considering § 2255 motions are generally directed to hold evidentiary hearings, it is apparent from the arguments before the Court and the record of the underlying criminal proceeding that, regardless of the evidence adduced at such a proceeding, Petitioner would not be entitled to any relief based on his motion.  *See Booth*, 432 F.3d at 545.  An appropriate order will be entered.


DATED: May 20, 2019


/s/ Freda L. Wolfson
FREDA L. WOLFSON
U.S. CHIEF DISTRICT JUDGE